# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN HARRISON, | * | C.A. No. 24-01206 RGA |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | |
| | * | |
| ARCTIC GLACIER U.S.A., INC., | * | |
| | * | |
| *Defendant*. | * | |
| | * | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff John Harrison, by and through his undersigned counsel, bringing his First Amended Complaint against Defendant Arctic Glacier U.S.A., Inc., alleging as follows:

## FACTS

### Parties

1. Plaintiff John Harrison ("Harrison" or "Plaintiff") is an adult individual and resident of New Hampshire. Harrison may be contacted through his undersigned counsel.

2. Defendant Arctic Glacier U.S.A., Inc. ("Arctic" or "Defendant") is a corporation organized in and pursuant to the laws of the State of Delaware. Arctic's

1

registered agent is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

## Jurisdiction and Venue

3. This Court has jurisdiction over – and venue is proper concerning – the parties and the claims asserted herein as Arctic is a corporation organized and domiciled in the State of Delaware. Further, Paragraph 22 of the parties' March 16, 2020 Employment Agreement (the "Employment Agreement") (attached hereto as **Exhibit A**), mandates that this action be brought in Delaware.

## Common Allegations of Fact

4. Arctic employed Harrison from in or around July 2019 through April 30, 2024, during which Harrison served as Region President and Chief Operating Officer.

5. In March 2020, the two executed the Employment Agreement.

6. At all relevant times, Arctic paid Harrison's wages pursuant to the laws and regulations of New Hampshire, including withholdings and taxes therefrom.

7. Pursuant to the Employment Agreement, Arctic had the option to terminate Harrison without "Cause", a defined term. Should Arctic do so, the Employment Agreement obligated it to pay Harrison the "Severance Benefits", which are 12 months' salary, a cash bonus equal to the bonus Arctic paid Harrison for the

preceding fiscal year, and a prorated annual bonus for the year in which Arctic terminated Harrison's employment without Cause.

8. Arctic's promise to pay the prorated annual bonus for the year in which Arctic terminated Harrison's employment without Cause amounts to a payment to Harrison for services rendered during the same year.

9. The Employment Agreement also afforded Harrison the option to resign his employment with "Good Reason", a defined term. Should Harrison do so, the Employment Agreement also obligated Arctic to provide Harrison the Severance Benefits.

10. In or around January 2024, Arctic's CEO communicated to Harrison that he will be reducing certain of Harrison's duties and responsibilities.

11. Arctic's CEO carried out this decision in or around that time and through March 2024, when Arctic's CEO informed Harrison that he would be hiring a new Chief Commercial Officer that would be taking over certain of Harrison's duties and responsibilities.

12. On or about April 4, 2024, Harrison had a discussion with Arctic's CEO regarding the diminution of his duties and responsibilities. Harrison brought up his ability to resign with Good Reason, but expressed his desire to come to a mutual agreement as he believed Arctic was preparing to terminate his employment.

13. Harrison sent the email attached hereto as **Exhibit B** to Arctic's CEO after their April 4, 2024 discussion.

14. **Exhibit B** is not Harrison's notice of resignation, instead an unequivocal follow-up to his April 4, 2024 oral discussion with Arctic's CEO. Harrison referenced in his April 4, 2024 email that he was concerned over the "reduction of [his] responsibility" and "diminution of [his] responsibilities", consistent with his intent to resign with Good Reason should he be unable to come to a mutual agreement with Arctic. Harrison and Arctic had not come to a mutual agreement at this time, nor did they in the future.

15. Further, **Exhibit B** did not comply with the notice provisions of the Employment Agreement, which reads as follows:

> 17. <u>Notices</u>. Any and all notices, requests, demands and other communications provided for by this Agreement shall be in writing and shall be effective when delivered in person, consigned to a reputable national courier service or deposited in the United States mail, postage prepaid, registered or certified, and addressed to the Executive at his last known address on the books of the Company or, in the case of the Company, at its principal place of business, attention of the Board, or to such other address as either party may specify by notice to the other actually received.

16. Arctic agreed that Harrison was required to provide written notice of his resignation 90 days in advance. **Ex. A, ¶ 5(f)**. **Exhibit B** is clearly not such a notice, and Arctic's position to the opposite is frivolous and in bad faith.

17. On or about April 16, 2024, Harrison had a follow up discussion with Arctic's CEO and Chief Human Resources Officer ("CHRO"). Arctic took the position that

grounds for Harrison to resign with Good Reason did not exist. Harrison informed the two that he disagreed, mentioning he had counsel opine on the same. Arctic then asserted that they needed to discuss Harrison's resignation, to which Harrison responded he has not resigned and had not provided the requisite notice for the same. Arctic responded that it would discuss the issue and get back to Harrison.

18. On April 18, 2024, Harrison wrote the email attached hereto as **Exhibit C** to Arctic's CEO. As can be seen therein, Harrison sought to clarify the notice requirements of the Employment Agreement, which are found within paragraph 17 (Harrison's effort to comply with the Employment Agreement's notice requirements underscore the fact that **Exhibit B** clearly was not a notice of resignation in any way, shape, or form). Because Harrison and Arctic had yet to come to an agreement regarding Harrison's resignation with Good Reason, Harrison was preparing to provide notice of his resignation with Good Reason pursuant to paragraph 17 of the Employment Agreement.

19. On or about April 19, 2024, Harrison again spoke with Arctic's CEO and CHRO. Arctic informed Harrison that they were accepting his resignation (despite it never being tendered) and that Harrison's last day would be April 30, 2024. Arctic provided Harrison with a proposed severance agreement that offered him substantially less than the Severance Benefits (also proposing more restrictive covenants).

20. Harrison did not resign and never agreed to resign, nor did he provide Arctic notice of resignation pursuant to the Employment Agreement or otherwise. Instead, as is detailed herein, Harrison communicated that he planned to provide notice of his intent to resign with Good Reason.

21. Harrison did not sign or otherwise agree to the Arctic's proposed severance agreement that offered him substantially less than the Severance Benefits.

22. Arctic terminated Harrison's employment without Cause as a result.

23. However, since Arctic terminated Harrison's employment without Cause, Arctic continues to take the false position that Harrison resigned without Good Reason.

24. Arctic has refused to provide Harrison the Severance Benefits.

**COUNT 1: BREACH OF THE EMPLOYMENT AGREEMENT**

25. Harrison re-alleges and incorporates by reference all allegations and paragraphs in this complaint (except those that are inconsistent with this cause of action, including but not limited pleadings in the alternative), above and below, as though fully set forth herein.

26. As is detailed herein, Arctic terminated Harrison's employment without Cause.

27. Arctic has refused to provide Harrison with the Severance Benefits.

28. As a direct and proximate cause, Plaintiff has suffered damages, including but not limited to the Severance Benefits.

## COUNT 2: NEW HAMPSHIRE WAGE PAYMENT VIOLATION (RSA 275:44)

29. Harrison re-alleges and incorporates by reference all allegations and paragraphs in this complaint (except those that are inconsistent with this cause of action, including but not limited pleadings in the alternative), above and below, as though fully set forth herein.

30. As is detailed herein, Arctic wrongfully denied Harrison the Severance Benefits, feigning that Harrison resigned when it in fact terminated Harrison without Cause.

31. Part of the Severance Benefits included a pro rata bonus for 2024, which was a contemplated payment to Harrison for his 2024 service. Harrison earned this bonus through his 2024 service to Arctic, and Arctic owes his bonus to Harrison due to its termination of Harrison without Cause.

32. Arctic must pay Harrison's reasonable attorneys' fees due to its wage payment violation.

33. Further, Arctic's position that Harrison resigned is frivolous and in bad faith, as are its litigation tactics to date. Therefore, Arctic must pay Harrison liquidated damages regarding the pro rata bonus at issue, as well.

## **Prayer for Relief**

WHEREFORE, Harrison prays for judgment and damages against Arctic as follows:

A. Award Harrison the Severance Benefits;

B. Award Harrison his reasonable litigation costs;

C. Award Harrison his reasonable attorneys' fees;

D. Award Harrison liquidated damages;

E. Award Harrison any other damages or losses he has suffered related to Arctic's conduct as is described in this Complaint;

F. Award Harrison pre and post judgment interest; and

G. Award Harrison such other relief as this Court deems just and equitable.

Respectfully,

**LAW OFFICE OF
DANIEL C. HERR LLC**

Dated: November 8, 2024      */s/Daniel C. Herr*
Daniel C. Herr (No. 5497)
3411 Silverside Road
The Baynard Building
Wilmington, DE 19810
dherr@dherrlaw.com
*Attorney for Harrison*